**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| VERA OKAFOR GIVENS, as next of kin and wrongful death beneficiary of RODNEY LOUIS HAYNES, JR., deceased, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. _____ ) |
| METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY; SHERIFF DARON HALL (in his official capacity); CAPTAIN JARROD GRIFFY, (in his individual and official capacity); SERGEANT JASON PARKER, (in his individual and official capacity); | ) **JURY DEMAND** ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## COMPLAINT

Plaintiff Vera Okafor Givens, as mother, next of kin, and statutory wrongful death beneficiary of Rodney Louis Haynes, Jr., deceased, by and through undersigned counsel, brings this civil rights action pursuant to 42 U.S.C. § 1983 against the above-named Defendants, and for her Complaint states as follows:

### I. INTRODUCTION

1. Rodney Louis Haynes, Jr. was a pretrial detainee who was beaten to death inside a Nashville jail on June 28, 2025—just four days after Davidson County Sheriff's Office ("DCSO") officers personally documented his specific, gang-related fears for his safety and did nothing to screen his housing placement.

2. Mr. Haynes was never convicted of any crime was in the custody and care of the Metropolitan Government of Nashville and Davidson County, which owed him a constitutional duty to protect him from a known and obvious risk of serious harm.

3. In the days before his death, Mr. Haynes told officers he was in fear for his safety, was involved in a documented inmate-on-inmate altercation, and—most critically—personally and contemporaneously warned a DCSO sergeant that he could not be safely housed because of the presence of "opposite gang members."

4. Officers documented this warning in a written "Inmates Incompatible" report. Despite this real-time, officer-verified safety warning, DCSO transferred Mr. Haynes into a maximum-security cell with an unknown inmate, without conducting any gang affiliation check, incompatibility screening, or risk assessment.

5. Within days, that cellmate beat him to death.

6. Mr. Haynes died as a direct and proximate result of Defendants' deliberate or reckless disregard for his safety, their failure to train and supervise their officers, their unconstitutional customs and practices, and the systemic, dangerous overcrowding of the Davidson County jails—conditions the Sheriff himself has publicly acknowledged are "dangerous" and a "major liability for the city."

7. Plaintiff brings claims under 42 U.S.C. § 1983 for failure to protect, Monell municipal liability, and unconstitutional conditions of confinement, and seeks compensatory damages, punitive damages against the individual Defendants, and attorney's fees under 42 U.S.C. § 1988.

2

## II. JURISDICTION AND VENUE

8. This action arises under the Constitution and laws of the United States, specifically the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

9. This Court has supplemental jurisdiction over any related state-law claims pursuant to 28 U.S.C. § 1367.

10. Venue is proper in the Middle District of Tennessee, Nashville Division, pursuant to 28 U.S.C. § 1391(b), because the events giving rise to this action occurred in Davidson County, Tennessee, and all Defendants reside in or conduct the relevant business in this District.

## III. PARTIES

11. **Plaintiff Vera Okafor Givens** is the mother of the decedent, Rodney Louis Haynes, Jr., and brings this action as his next of kin and statutory wrongful death beneficiary pursuant to T.C.A. § 20-5-106(a). The decedent was never married. Plaintiff is a resident of Tennessee.

12. **Decedent Rodney Louis Haynes, Jr.** ("Mr. Haynes") was, at all relevant times, a pretrial detainee in the custody of the Davidson County Sheriff's Office. Mr. Haynes was a 47-year-old Black male, born November 15, 1977. He was booked into DCSO custody on December 13, 2024, and was never convicted of the charges for which he was held. He died on July 26, 2025, of complications of blunt head trauma sustained in an assault by his cellmate while in custody.

13. **Defendant Metropolitan Government of Nashville and Davidson County** ("Metro Nashville") is a consolidated municipal government organized under the laws of the State of Tennessee. Metro Nashville operates the Davidson County correctional facilities through the Davidson County Sheriff's Office and is responsible for the policies, customs, training, supervision, and operation of those facilities, including the Downtown Detention Center ("DDC") and the Maximum Correctional Center ("MCC").

14. **Defendant Sheriff Daron Hall** is the Sheriff of Davidson County and is sued in his official and individual capacities. As Sheriff, he is the final policymaker for DCSO with respect to the classification, housing, supervision, and protection of inmates, and he publicly acknowledged that the dangerous overcrowding of the Davidson County jails was a "major liability for the city."

15. **Defendant Captain Jarrod Griffy** was, at all relevant times, a captain at the Downtown Detention Center and the ranking officer personally present at both the June 24, 2025 inmate-on-inmate assault (Incident 504817) and the June 25, 2025 Inmates Incompatible report (Incident 504832). He was personally notified by multiple officers of Mr. Haynes's documented gang-incompatibility warning and the resulting need for a screened housing placement. He is sued in his individual and official capacities.

16. **Defendant Sergeant Jason Parker** was, at all relevant times, a sergeant at the Downtown Detention Center. On June 24, 2025, Sgt. Parker responded to and documented the inmate-on-inmate assault in Pod 2C (Incident 504817). On June 25, 2025, at approximately 00:20, Sgt. Parker personally accompanied Mr. Haynes to his new housing assignment in Pod 2A, personally heard Mr. Haynes state that "there are too many opposite gang members in this pod, I can't stay in here," personally returned Mr. Haynes to a holding cell, and personally

4

filed a written Inmates Incompatible report (Incident 504832) notifying classification and Captain Griffy of the gang safety warning. Sgt. Parker had direct, first-hand, contemporaneous knowledge of the specific gang incompatibility risk facing Mr. Haynes at the time the housing transfer to MCC was authorized. He is sued in his individual and official capacities.

## IV. FACTUAL ALLEGATIONS

### A. Incarceration and Prior History of Violence

17. Mr. Haynes was booked into the Davidson County Downtown Detention Center on December 13, 2024.

18. Upon intake, he arrived with blood on his clothing, which was documented as a biohazard incident.

19. He entered DCSO custody already in a condition suggesting prior violence.

20. On December 17, 2024, while Mr. Haynes was in a courthouse holding cell, another inmate attacked a third inmate and Mr. Haynes was incidentally kicked in his left arm, which was already in a medical wrap from a prior injury.

21. The Use of Force Report for this incident was completed with all checkboxes left blank—no injuries documented, no photograph notation, and no health services notification time recorded—evidencing a pattern of incomplete and inadequate incident documentation.

22. On December 20, 2024, Mr. Haynes suffered a medical emergency in DDC Pod 2B.

5

23. He was found unable to walk, vomited on the dayroom floor, and was transported by emergency medical services to Metro General Hospital for a higher level of care than the facility could provide.

24. Despite this serious medical episode, the record does not reflect any reclassification or housing review in response.

**B. Mr. Haynes's Documented Fear for His Safety**

25. On January 19, 2025, Mr. Haynes formally reported to a DCSO officer that he was "in fear for his safety."

26. He stated specifically that his cellmate did not like his medical condition and had made threats against his safety.

27. The officer notified a sergeant and called the classification unit. The record contains no follow-up documentation reflecting any protective action taken in response to this explicit fear-for-safety report.

**C. The June 24, 2025, Assault and the Documented Gang-Incompatibility Warning**

28. On June 24, 2025, at approximately 21:10, an altercation occurred in DDC Pod 2C in which Mr. Haynes struck another inmate.

29. Multiple supervisors responded. Mr. Haynes was charged with disciplinary violations and, following review of photographs and video by the Disciplinary Board, was sentenced to 30 days of lockdown.

30. The investigative report documented that Mr. Haynes told investigators he had been threatened by the other inmate to "get revenge for his friend."

6

31. This statement established that Mr. Haynes perceived himself to be in danger from inmate associates of the other inmate—a documented threat that should have driven his housing classification.

32. Immediately following the June 24 incident, at approximately 00:20 on June 25, 2025, a DCSO sergeant documented an "Inmates Incompatible" report.

33. While escorting Mr. Haynes to his new housing assignment in Pod 2A, Mr. Haynes stated: "there are too many 'opposite gang members' in this pod, I can't stay in here."

34. The sergeant placed Mr. Haynes back in a holding cell and notified classification and a captain.

35. This documented, real-time, officer-verified incompatibility and gang-safety warning gave DCSO direct, specific, and contemporaneous notice that Mr. Haynes could not safely be housed with unknown inmates without gang screening.

**D. The Fatal Housing Placement**

36. Despite the June 25 incompatibility report and the documented gang-related safety concerns, one or more DCSO officers — who received Sgt. Parker's notification of the gang-incompatibility warning on June 25, 2025 at approximately 00:22 — authorized the transfer of Mr. Haynes to the Maximum Correctional Center, Juliet Pod, Cell Lower 14, where he was housed with inmate Emmanuel Madrick Nash (OCA: 609756).

37. The record contains no documentation of any gang affiliation check, incompatibility screening, classification review, or risk assessment conducted by those DCSO officers before authorizing that transfer.

7

38. The notification from Sgt. Parker to classification and to Captain Griffy was received, processed, and acted upon by one or more DCSO officers who made the active decision to transfer Mr. Haynes to MCC without any protective screening.

39. That decision was the direct and proximate cause of Mr. Haynes's death.

**E. The Fatal Assault on June 28, 2025**

40. On June 28, 2025, at approximately 22:48–22:50, a DCSO officer conducting medication pass at the Maximum Correctional Center looked through the window of Cell Lower 14 and observed inmate Nash standing over Mr. Haynes, who was unconscious with blood visible in the cell. The officer called a Code Red.

41. A DCSO captain responded and directed inmate Nash to be restrained and escorted from the cell. Officers entering the cell found Mr. Haynes with a bloody nose and lips, unconscious on the floor.

42. A cervical collar was applied and emergency medical services were summoned. Mr. Haynes was transported to Vanderbilt University Medical Center.

43. The following morning, Metro Nashville Police Department detectives observed blood spatter on the cell wall and located approximately three of Mr. Haynes's teeth on the floor of the cell.

44. Photographs taken by DCSO officers, witnessed by other DCSO officers, documented Mr. Haynes's condition, the blood at the scene, and inmate Nash's hands and face. Inmate Nash had an injury to his right hand consistent with striking another person.

**F. Mr. Haynes's Death and the Medical Examiner's Homicide Ruling**

45. At Vanderbilt University Medical Center, Mr. Haynes was diagnosed with, among other injuries, a left frontal bone fracture with underlying subdural hemorrhage.

46. He underwent emergency burr-hole surgery and drain placement.

47. His condition declined over the following weeks, and he was pronounced dead on July 26, 2025.

48. The Davidson County Medical Examiner performed an autopsy and documented cerebral edema, bilateral scalp hemorrhage, and a linear skull fracture.

49. The Medical Examiner determined the cause of death to be complications of blunt head trauma and the manner of death to be HOMICIDE, with the circumstance that the "decedent was assaulted by another person."

50. The death certificate likewise lists the manner of death as homicide and the injury location as the Davidson County Correctional Center.

51. Inmate Nash was criminally charged in connection with the assault on Mr. Haynes. Upon Mr. Haynes's death, the charge was upgraded to criminal homicide.

**G. Systemic Overcrowding of the Davidson County Jails**

52. At the time of Mr. Haynes's death, the Davidson County jails were approximately 300 inmates over capacity and had failed a state inspection.

53. Sheriff Daron Hall publicly acknowledged that the facilities were dangerously overcrowded and stated that the overcrowding was a "major liability for the city."

54. By May 2026, overcrowding had increased to approximately 415 inmates over capacity.

9

55. This systemic overcrowding eliminated the ability of DCSO to safely classify and separate incompatible inmates.

56. The failure to safely house Mr. Haynes was not an isolated mistake but the product of a policy and custom of maintaining unconstitutional population levels that made safe classification impossible.

<h1 style="text-align:center"><u>COUNT I</u></h1>

**42 U.S.C. § 1983 — Failure to Protect**
**(Fourteenth Amendment Due Process)**
**(Against Defendants Captain Jarrod Griffy and Sergeant Jason Parker in Their Individual**
**Capacities)**

57. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

58. As a pretrial detainee, Mr. Haynes's right to be protected from harm derived from the Due Process Clause of the Fourteenth Amendment.

59. Mr. Haynes faced an objectively serious and substantial risk of harm that was documented, escalating, and known to DCSO through its own records, including: (a) his January 19, 2025 written report of fear for his safety; (b) the June 24, 2025, assault and the investigator's report documenting that he had been threatened by inmate Turner to "get revenge for his friend"; and (c) the June 25, 2025 officer-documented gang-incompatibility warning.

60. The personal involvement of each individual defendant in disregarding that known risk is set forth below.

**A. Defendant Sergeant Jason Parker**

61. Defendant Parker had actual, first-hand knowledge of the substantial risk of serious harm to Mr. Haynes.

62. On June 24, 2025, Parker responded to and prepared the report on the inmate-on-inmate assault in Pod 2C (Incident 504817).

63. On June 25, 2025, at approximately 00:20, Parker personally escorted Mr. Haynes to his new housing assignment in Pod 2A and personally heard Mr. Haynes state that there were "too many 'opposite gang members' in this pod, I can't stay in here."

64. Parker thus had subjective, actual knowledge that Mr. Haynes faced a specific gang-based threat if housed with unscreened inmates.

65. Although Parker returned Mr. Haynes to a holding cell and filed a written Inmates Incompatible report (Incident 504832) notifying classification and Captain Griffy, Parker violated Mr. Haynes's Fourteenth Amendment rights by failing to ensure that the documented incompatibility warning resulted in any protective gang screening before Mr. Haynes was transferred to a maximum-security cell, and by participating in or acquiescing to a transfer process he knew lacked any such screening.

66. Parker acted with deliberate or reckless disregard of the known risk of harm to Mr. Haynes.

**B. Defendant Captain Jarrod Griffy**

67. Defendant Griffy was the ranking officer personally present at the June 24, 2025 assault (Incident 504817) and was personally notified of the June 25, 2025 Inmates Incompatible report (Incident 504832).

68. Griffy therefore had actual knowledge of both the escalating violence involving Mr. Haynes and the specific, contemporaneous gang-incompatibility warning Mr. Haynes gave.

69. As the ranking supervisor with command authority over Mr. Haynes's housing, Griffy violated Mr. Haynes's Fourteenth Amendment rights by failing to order or ensure a gang affiliation check, incompatibility screening, or protective housing review before Mr.

Haynes was transferred to the Maximum Correctional Center and placed in a cell with an unknown inmate.

70. Griffy's failure to act in the face of a known and unjustifiably high risk of harm—despite direct notice and the authority to prevent the transfer—constituted deliberate or reckless disregard of that risk.

## C. The Right Was Clearly Established

71. The right of a detainee to be protected from a known and substantial risk of serious harm at the hands of another inmate was clearly established at all relevant times under *Farmer v. Brennan*, 511 U.S. 825 (1994), and its Sixth Circuit progeny.

72. No reasonable officer in the Individual Defendants' positions could have believed it was lawful to place Mr. Haynes in an unscreened maximum-security cell after his documented gang-incompatibility warning.

73. As a direct and proximate result of the Individual Defendants' deliberate or reckless disregard for Mr. Haynes's safety, Mr. Haynes suffered severe injuries, conscious pain and suffering, and death, and Plaintiff has suffered the damages set forth below.

**42 U.S.C. § 1983 — Monell Municipal Liability**
**(Against Defendant Metropolitan Government of Nashville and Davidson County)**

74. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

75. Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality is liable under § 1983 when its own policy, custom, or the decision of a final policymaker is the moving force behind a constitutional violation.

76. Metro Nashville's liability arises through the discrete policies, customs, and policymaker decisions set forth below.

## A. Defendant Metro Nashville Through Its Final Policymaker, Sheriff Daron Hall

77. Defendant Sheriff Daron Hall is the final policymaker for the Davidson County Sheriff's Office with respect to the classification, housing, supervision, and protection of inmates. Sheriff Hall had actual knowledge that the Davidson County jails were dangerously overcrowded—approximately 300 inmates over capacity at the time of Mr. Haynes's death and the subject of a failed state inspection—and publicly acknowledged that the overcrowding was "dangerous" and a "major liability for the city."

78. Notwithstanding this actual knowledge, Sheriff Hall, acting in his official capacity as final policymaker, made and ratified the policy decisions to continue operating the jails at unconstitutional population levels and without adequate classification and incompatibility-screening systems.

79. Because Sheriff Hall is the official whose decisions represent the official policy of Metro Nashville in this domain, his deliberate or reckless maintenance of these conditions is attributable to Metro Nashville as municipal policy under *Monell*.

**B. Defendant Metro Nashville's Failure to Train and Supervise**

80. Metro Nashville failed to adequately train and supervise its classification and supervisory officers in responding to inmate fear-for-safety reports, conducting gang and incompatibility screening before housing transfers, completing accurate incident documentation, and escalating repeated patterns of inmate-on-inmate violence to classification review.

81. The need for such training was so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that Metro Nashville's failure constituted deliberate indifference. See *City of Canton v. Harris*, 489 U.S. 378 (1989).

**C. Defendant Metro Nashville's Unconstitutional Custom and Practice**

82. Metro Nashville maintained a widespread and consistent custom of conducting cursory, one-line medical clearances following violent incidents, failing to document injuries on use-of-force forms, and notifying classification without producing any documented protective housing response to fear-for-safety reports.

83. This custom was so persistent and widespread as to constitute a policy with the force of law.

15

## D. Defendant Metro Nashville's Overcrowding as the Moving Force

84. Metro Nashville maintained the Davidson County jails at approximately 300 inmates over capacity at the time of Mr. Haynes's death, despite the Sheriff's own public acknowledgment that the overcrowding was "dangerous" and a "major liability."

85. That overcrowding was the moving force behind the failure to safely classify Mr. Haynes, because the facility lacked the capacity to separate incompatible inmates.

86. The combination of overcrowding with the documented failure to protect a known-risk detainee crossed the constitutional line.

87. As a direct and proximate result of Metro Nashville's policies, customs, and failures to train and supervise, Mr. Haynes suffered severe injuries, conscious pain and suffering, and death, and Plaintiff has suffered the damages set forth below.

**COUNT III**

**42 U.S.C. § 1983 — Unconstitutional Conditions of Confinement**
**(Against Defendant Metropolitan Government of Nashville and Davidson County)**

88. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

89. As a pretrial detainee, Mr. Haynes had a Fourteenth Amendment right to conditions of confinement that did not amount to punishment and that were not objectively unreasonable.

**A. Defendant Metro Nashville's Unconstitutional Conditions of Confinement**

90. The conditions at the Davidson County jails—a facility approximately 300 inmates over capacity that failed a state inspection and whose Sheriff publicly warned of safety dangers—were objectively unreasonable.

91. These conditions made it impossible to safely classify and separate incompatible inmates and directly caused the fatal housing placement of Mr. Haynes.

92. Through its final policymaker, Sheriff Daron Hall, Metro Nashville maintained these conditions with deliberate or reckless disregard for the safety of the pretrial detainees in its custody, including Mr. Haynes.

93. As a direct and proximate result of these unconstitutional conditions, Mr. Haynes suffered severe injuries, conscious pain and suffering, and death, and Plaintiff has suffered the damages set forth below.

## V. DAMAGES

94. As a direct and proximate result of Defendants' conduct described above, Plaintiff is entitled to recover compensatory damages, including: (a) the conscious pain and suffering endured by Mr. Haynes between the June 28, 2025 assault and his death on July 26, 2025; (b) Plaintiff's loss of her son's companionship, society, guidance, and relationship; (c) Mr. Haynes's pre-death medical expenses, including emergency surgery, intensive care, and palliative care at Vanderbilt University Medical Center; and (d) funeral and burial expenses.

95. Plaintiff is further entitled to recover punitive damages against the Individual Defendants in their individual capacities, who acted with reckless or callous disregard for Mr. Haynes's constitutional rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter judgment in favor of Plaintiff and against Defendants on all counts;

B. Award compensatory damages in an amount to be determined by the jury;

C. Award punitive damages against the Individual Defendants in their individual capacities in an amount to be determined by the jury;

D. Award Plaintiff her reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

E. Award pre- and post-judgment interest as allowed by law; and

F. Grant such other and further relief as the Court deems just and proper.

18

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the

Federal Rules of Civil Procedure.


Respectfully submitted,

/s/ Christopher Smith
Christopher Smith
DAVID RANDOLPH SMITH & ASSOCIATES
Christopher Smith, BPR #034450
1913 21st Ave S
Nashville, Tennessee 37212
Phone: 615-742-1775
Fax: 615-742-1223
csmith@drslawfirm.com
*Counsel for Plaintiff*